MATTHEW RYAN, *et al.*, v. THE LEAVENWORTH, ATCHISON & NORTHWESTERN RAILWAY COMPANY, *et al.*

1. DIRECTORS OF A CORPORATION, *its Primary Agents and Trustees; Corporate Affairs, not to be Managed for their Private Advantage.* The directors of a corporation are its primary agents, and, in reference to corporate property, act in the relation of trustees. The character of their relation requires of them the highest and most scrupulous good faith in their transactions for the corporation and the stockholders. The law does not permit them to manage the affairs of the corporation for their personal and private advantage, nor pecuniarily to be interested in contracts which other parties make with the corporation, through their influence and direction.

2. CONTRACT, *When Fraudulent and Void; Corporation may call its Officers to Account for Abuse of Trust; Liability of Participants in Frauds.* An association of fifteen persons, consisting among others of two of the directors of a railroad corporation, one of whom was its president and the other its treasurer, was formed to obtain a contract for the construction of the railroad of said corporation; to gain the control of the corporation by the issuance to the association, as part payment of the work to be done, of a majority of the stock of the corporation; to depreciate and render valueless the shares of certain stockholders, and acquire for the association the property and effects of the corporation. At a meeting of a bare quorum of the directors of the corporation, at which the president and treasurer attended, a proposal was received from C., who was a member of the association, on behalf of himself and his associates, whose names were concealed, to construct the road. The directors referred the matter to the president of the corporation. He made the contract therefor with C., as previously arranged by the association, but in fact for the joint interest of all the members of the association, which included the president and treasurer. To further conceal the true character of this arrangement, C. transferred the contract to G. & Co., and

under the latter name the work was done. This transfer was merely colorable; the work was performed, expenses paid, and profits divided, by the association. The name of G. & Co. was only another style for the association. With the majority of stock issued under the contract, seven of the association were chosen directors of the corporation, constituting a majority of that body. Ever since, a majority of the directors has been selected from the association. The president, who executed the contract, has been continued in' office as a director and president. *Held,* That the said contract, made by the president in the name of the corporation with C., for the benefit of himself and his associates, is fraudulent and void. And *held,* that the corporation may call its officers to account for their willful abuse of their trust, or for any misapplication of the funds of the corporation, or for any profits realized under the fraudulent contract. And further, *held,* that all the persons who participated with the directors and officers of the corporation in their fraudulent and unlawful transactions, with full knowledge of all the facts, are equally liable with said officers.

3. RIGHT OF RAILROAD CORPORATION, *to Purchase and Hold Real and Personal Property; Right to Purchase Stock in Connecting Railroad Line.* Where a railroad corporation was organized in 1868, under chapter 23, General Statutes, relating to private corporations, *held,* that by virtue of the powers conferred by the provisions of said act, the corporation had the right, in December, 1868, to purchase and hold such real and personal estate as the purposes of the corporation required, and in the absence of any showing to the contrary, a purchase of stock in a connecting railroad line will be presumed to be requisite for the purposes of the corporation. And *held,* that subdivision 2 of section 47 of said chapter 23 does not limit the power of railroad corporations to take and hold only such real estate and other property as are obtained without consideration.

4. EACH STOCKHOLDER OF CORPORATION, *a Cestui que Trust as to its Property and Effects; Action Against Officers for Frauds.* As the corporation itself holds its property as trustee for the stockholders, who have a joint interest in all its property and effects, and each of whom is related to it as *cestui que trust,* if the corporation refuses to call to account, by proper legal proceedings, its directors and officers who are abusing their trust, misapplying the funds of the corporation, and receiving profits from contracts made by other parties with the corporation, through their aid, or if such corporation is still under the control of those who necessarily must be made defendants in such proceedings, so that it would be a mockery to require or permit a suit against them to be brought and prosecuted under their management, the stockholders who are the real parties in interest, or a part of them, may maintain an action to make such officers, and all parties who have participated with said officers in their unlawful transactions, account for their wrongs and frauds; and the corporation is a proper party defendant with them.

5. RAILROAD CORPORATION, *Owning Stock in Connecting Railroad Line, and Both Controlled by Same Officers; Fraudulent Cancellation of Stock; Action for an Accounting.* Where one railroad corporation is the owner of a large amount of stock in a connecting railroad corporation, and both of the corporations are under the actual potential control of the same persons as officers of the corporations, and the officers of the connecting line of road are guilty of a misapplication of the corporate funds for their personal benefit, the stockholders of the former corporation, or a part of them, may institute a suit to compel the officers to account for such misapplication; and, *held,* that where the stock of the first corporation in the connecting road has been fraudulently canceled by the officers of the two corporations, and a like amount of stock in the connecting road issued without consideration to S. and N. as trustees for the former corporation, and such corporation is the equitable owner of the same, the stockholders of said first corporation, or a part of them, may maintain a suit to compel the officers of such connecting corporation to restore to said corporation the funds and property wrongfully taken by them, without first bringing an action to compel a transfer of the stock from S. and N. to the corporation equitably owning the same, if both of said corporations and S. and N. are joined as defendants in the suit, and S. and N. have refused on request to institute a suit to protect the property and interests of the corporation equitably owning the stock in the names of S. and N., as trustees.

6. RIGHT OF STOCKHOLDER TO DIVIDENDS; *Assignment of Stock Transfers this Right.* As incident to shares of stock in a corporation, is the right to receive all dividends by the owner and holder of the same after the purchase thereof—that is, their proportional share of all profits not divided when such purchase is completed; and it is immaterial at what times or from what sources these profits have been earned. The assignment of a share of stock from one owner to another conveys and transfers not only the stock, but, as incident thereto, the right to share in the profits of the corporation, in the proportion which the stock so transferred bears to the whole capital stock used in the enterprise for which the corporation was organized.

7. CLAIMS OF STOCKHOLDERS, *Subordinate to Claims of Creditors.* The claims of stockholders in a corporation are subordinate to the claims of creditors, and the stockholders are not entitled to any division of the profits and moneys of a corporation until all its debts are paid.

8. STATUTE OF LIMITATIONS; *Discovery of Fraud; Notice.* That an innocent party may not suffer while in ignorance of his rights, the statute excepts the plaintiffs from the limitation until a discovery of the fraud; but knowledge on the part of the guilty officers and agents of a corporation of the frauduent acts and conduct of themselves and guilty associates, is no notice to the corporation or its stockholders, so as to give the advantage of such notice to such agents and associates.

9. ——— *Computation of Time.* Where the record shows that the action was commenced March 11th, 1873, and on June 14th, 1875, the plaintiffs withdrew their original petition from the files, and filed an amended petition in the same action, with the same parties, and that all this was done with the leave of the court and consent of the defendants, and the demurrers filed to the original petition were at once, without any change, refiled to the amended petition, the amended petition relates back to the commencement of the action, and speaks of that date.

*Error from Leavenworth District Court.*

THIS action was commenced by the plaintiffs in error against the defendants in error in the court below, on the 11th day of March, 1873. An amended petition was filed in the case on the 14th of June, 1875. The petition, as amended, was very voluminous. Its allegations were in substance as follows:

That a company called the "Missouri River Railroad Company" was incorporated under the general laws of the state, February 17th, 1864, to build and operate a road from the terminus of the Missouri Pacific road, at the state line in Wyandotte county, to Leavenworth, and thence to Fort Leavenworth. The capital stock was fixed at $200,000.

On April 6, 1865, a subscription to the stock of the company was opened, and $43,500 was subscribed. Of this sum, $970 was paid at the time, and nothing has ever been paid thereon since.

The list of subscribers and amounts subscribed and paid were annexed as an exhibit to the petition.

May 8, 1865, Leonard T. Smith, Thomas C. Stevens, Emanuel H. Gruber, John F. Richards, C. B. Brace, J. C. Stone, A. McCauley, C. S. Stettauer, C. Blake, Lucien Scott and E. H. Marsh were chosen directors of the company.

The same day, Leonard T. Smith was elected president, Thos. C. Stevens, vice president, J. F. Richards, secretary, and E. H. Gruber, treasurer.

May 7, 1865, the city of Leavenworth, under authority of the statute authorizing such subscriptions, and an election held in pursuance of the statute, subscribed $250,000 to the stock of this company.

May 13, 1865, the authorized stock of the company was increased to $1,000,000.

June 20, 1865, the city issued $250,000 in bonds, paid its subscription, and received its stock certificates.

In July, 1865, the county of Leavenworth, under authority of the same statute and a like election, subscribed $250,000 more to the stock of the company, issued its bonds, paid the subscription, and received its stock certificates.

Soon after, all the individual subscribers except A. Caldwell, L. T. Smith, Lucien Scott, Thos. Carney, Thos. C. Stevens and E. H. Gruber, released to the company their right to stock, which was accepted by the company, and their connection with it ceased.

No further or other payments on account of stock subscription were ever made.

After the city and county had paid for their stock, the road was built, so far as it ever was built at all, by an association composed of the following persons, defendants in this action, viz.: Leonard T. Smith, Thomas A. Scott, John D. Perry, George R. Taylor, E. H. Gruber, Thomas Carney, Thomas L. Price, D. R. Garrison, Charles H. Peck, Oliver A. Hart, James Duffy, A. Caldwell, Lucien Scott, Levi Wilson and Merritt H. Insley.

They first agreed among themselves to build the road on these terms: They were to receive the bonds issued by the city and the county, $500,000 in all. Of these bonds, $300,000 were to be cashed at par by citizens of Leavenworth. They were to receive $700,000 in stock of the railroad company; also $500,000 in bonds of the company, to be secured by first mortgage on all its property.

The road when completed to be leased to the Missouri Pacific company, most of whose officers and directors, with other officers of prominent railroads, were engaged in the association.

These men formed a copartnership to engage in the work of building this railroad on the terms stated above, and to control and manage it after it was built.

In pursuance of the agreement, Thomas A. Scott and A. Caldwell appeared before the board of directors, and offered on behalf of themselves and their associates, whose names were concealed, to build the road on the terms agreed on among the copartners.

At the meeting a bare quorum was present, and two of the quorum, Smith and Gruber, the president and treasurer of the company, were at the same time members of the copartnership, and among the unnamed "associates" for whom Scott made the proposal.

The board of directors at said meeting referred the matter

24—24 KAS.

to Smith, the president, who was a member of the firm, and authorized him to make a contract for building the road. He made the contract.

To conceal the nature of the transaction, it was agreed that the contract should be in the name of A. Caldwell, and that the others should be secret partners with him, and their interest concealed from public knowledge.

The name "A. Caldwell" was made the firm-name, and by that name the contract between the firm and Smith, one of its members, acting as president and agent, appointed by the directors to contract for the corporations, was executed.

The terms were those before agreed on by the partners, and proposed to the directors by Scott.

The plaintiffs charge that this partnership was formed and this contract made with intent, by aid of the members of the firm who were directors, and of such as should become directors and officers of the company, to render the city and county stock valueless; to fraudulently acquire its value for the members of the firm, and to acquire for the members of the firm all the property of the railroad company, and to place the railroad when built under the control of the Missouri Pacific company, a foreign corporation.

After the partnership was formed and before the contract aforesaid was made, certain persons who were responsible and able to give good security for the performance of their contract, made an offer in writing to do the clearing, grubbing, grading, masonry and track-laying of the entire road, and to furnish materials therefor, for $300,000. They were willing to enter into such contract, and would have done it if the same had been awarded to them. Had this been done, the whole cost of the road would not have exceeded $18,000 per mile. This was well known to Smith and Gruber, the president and treasurer, to whom the offer was made, but they, intending to make the fraudulent contract with their partners before stated, refused to accept the bid or lay it before the board of directors.

After the formation of the partnership, and before the land was acquired, hereinafter referred to, Levi Wilson, D. K. Houts and George Partridge were, by agreement with the partners, taken into the firm. They had full knowledge of all the facts charged against the firm, and are co-defendants.

Lucien Scott holds his share in the firm partly in trust for Thos. Carney.

To conceal the character of the transaction, Caldwell trans-

ferred the contract made by him to D. R. Garrison & Co., and under the latter name the work was done. This transfer was merely colorable; the work was done, expenses borne and profits divided by Caldwell and his associates, and the name D. R. Garrison & Co. was only another name for the original firm.

Before anything had been done in performance of the contract on the part of the firm, $700,000 in stock of the company was issued to Caldwell and his associates, without consideration.

This stock was issued before the January election in 1866, and at that election was voted on, and Caldwell and six of his copartners, making a majority of the board, were thus chosen directors, and a majority of the board have ever since been members of the firm, and the firm have ever since controlled the corporation, and Smith was reëlected president, and has ever since held that office.

At the last election held before the petition was filed, eight of the eleven directors were chosen from members of the firm, and the three others are not stockholders in the company.

About January 1st, 1866, before any part of the contract had been performed by Caldwell and his associates, the bonds of the company to the amount of $500,000 were issued to them, and secured by a first mortgage on the road and all the property of the company, on hand or to be acquired, Caldwell being trustee in the mortgage. A copy of the mortgage was made an exhibit and attached to the petition.

After Caldwell and his associates had thus obtained control of the company and become its directors, and obtained the stock and mortgage bonds, they proceeded to build a railroad from Wyandotte to the junction of the Kansas Pacific railroad, south of Leavenworth, about nineteen miles in length; from Wyandotte to the state line, two and one-half miles; and from the Kansas Pacific junction to Leavenworth, about four miles, a third rail was put on the track of the Kansas Pacific road, to accommodate the Missouri Pacific gauge. Plaintiffs do not know who paid for it, but the work was done by Garrison, who was building the western end of the Missouri Pacific road. The firm also built a mile of road from the freight depot in Leavenworth up to the city, and built a round-house on land not belonging to the Missouri River railroad company, which has been since used by the Kansas Pacific and Missouri Pacific companies jointly. The

third rail has since been removed, the Missouri Pacific company having changed its gauge in 1868.

Caldwell and his associates did not build the road of the Missouri River company to either terminus; they stopped two and one-half miles north of the southern and seven miles south of the northern terminus.

The whole cost of the road did not exceed $500,000.

Since July 1, 1866, the road of this company has been leased to the Missouri Pacific company. The rental was at first fixed at forty-five per cent. of the gross earnings, but in September, 1870, it was increased by more than forty per cent. of the original amount of the rent.

During 1865, negotiations were pending for the purchase of a tract of land known as the Delaware diminished reserve, containing over 92,000 acres of land. These negotiations terminated in a treaty, by which the Indians agreed to sell these lands at a minimum price of $2.50 per acre, and the railroad company to have the preëmption right to purchase. The treaty was ratified August 10th, 1866.

By its terms the secretary of the interior was authorized to sell the lands; required to give notice to the Missouri River railroad company of the fact that they were for sale, within thirty days after the ratification, and the railroad company was to have the exclusive right to purchase the same on giving notice to the secretary within twenty days after receiving notice, that it elected to do so.

The notice was given, and the company elected to make the purchase and gave the return notice within the time required by the treaty. The sale was made at $2.50 per acre, and improvements to be appraised and paid for, and a contract for sale and purchase executed by the secretary and the railroad company, and security given by the latter for performance of the contract. The contract was set out in full in the petition, and vests an equitable right to the lands in the railroad company.

Smith, with intent to deprive the company of their purchase, and obtain the same for the partnership, made a conveyance of these lands to Caldwell in the name of the company and under its seal, without authority from the company and without consideration, and as president, requested the secretary of the interior to issue the patent to Caldwell.

He wrote a letter in the name of the company to the same effect, and visited Washington with Caldwell, and induced the secretary to make the patent to Caldwell.

Caldwell and his partners then had on hand $438,000 at least, of funds belonging in equity to the railroad company, as follows:

| | |
|---|---:|
| Proceeds of city and county bonds cashed in Leavenworth by citizens at par | $360,000 |
| $140,000 same, worth 80c | 112,000 |
| $500,000 first-mortgage bonds, worth 80c | 400,000 |
| Rent from July, 1865, to July, 1867, at $33,000 | 66,000 |
| | $938,000 |
| Expended in construction, not more than | 500,000 |
| | $438,000 |

Caldwell paid for these lands out of these funds, the amount paid being not more than $250,000, and on this payment the secretary made the patent to Caldwell. The lands were described in full in the petition. They amounted to $92,598\frac{33}{100}$ acres, and were then worth $14 per acre.

Plaintiffs charged that Caldwell took the lands as trustee in equity for the railroad company, and that all of them held by him and his associates, have been since and now are so held.

Caldwell conveyed 8,023 acres of these lands to Shoemaker, Miller & Co., who were partners in his original firm, for $165,065.40, and divided the money among the partners to the original firm.

The remainder of these lands was divided into thirteen shares, and the shares drawn out and a division made among the members of the original firm — Caldwell and wife executing conveyances to the several parties of their respective shares.

A map of these lands was annexed as an exhibit to the petition.

Some of these lands have been sold by the partners to other persons, part for cash, part with security for deferred payments, and part are still held by the partners, among whom they were divided. Plaintiffs cannot state how much has been sold, how much realized, what securities are held, or what portion of the land is still unsold.

Although large sums have been realized in the business of the company from rents and other sources, including the amounts realized from the proceedings above stated, no dividends have been declared or profits divided among the stockholders, but all have been seized and converted by the directors, who are members of this firm, to the use of the firm.

In 1868, the Leavenworth, Atchison & Northwestern rail-

road company was incorporated to build a road from Leavenworth to Atchison, and thence northwest. The capital stock was fixed at $500,000, and afterward increased to $600,000.

Aid was sought for this company from the city and county of Leavenworth, and it was proposed to assign to this company the stock held by the city and county in the Missouri River railroad company.

Caldwell and his associates ascertaining that it was probable that this would be done, for the purpose of controlling the stock so to be assigned, and preventing investigation into their management of the Missouri River company, and to avoid being called to account therefor, proposed to the corporators that they would take the stock and build the road; and proposed to the plaintiffs to join with them in subscribing to the stock and building the road. This offer was made by Caldwell, Smith, Wilson and Garrison for themselves and five unnamed, and to plaintiffs unknown, associates.

Pending these investigations, Garrison came to Leavenworth, and on behalf of the firm, represented that he and the other copartners would be able to cause the mortgage bonds to be issued by the Leavenworth, Atchison & Northwestern railroad company, to furnish enough funds to build the road; that they would make the stock of the Missouri River company worth at least fifty cents on the dollar, and that it would not be necessary for the Leavenworth, Atchison & Northwestern stockholders to pay their stock in full in order to get the road built. These representations were made to induce the incorporators to let the firm take the stock, and to induce the plaintiffs to join with the firm in taking it. These promises were never kept.

The plaintiffs had no reason to disbelieve these statements, or to suppose Caldwell, Garrison and their associates had been guilty of or contemplated any fraud or concealment. They relied on these statements, and in consequence joined with Caldwell, Garrison and their associates in making the subscription. The stock was divided into nineteen parts, and subscribed in that proportion by the different persons who entered into the agreement. The five parts to be taken by the unnamed associates of Caldwell and Garrison, were taken by persons who subscribed for and afterward transferred their stock to defendants, Peck, Hart, Harrison, Garrison and Rhea, except that the subscription of E. A.

Richardson, which was made for the benefit of Harrison, was never transferred, but he holds it in trust for Harrison.

After the subscription and before the election of directors, Caldwell and his associates thus got possession of a majority of the stock. For the purpose of carrying out their intended fraud and concealment, they elected the directors, a majority of whom were members of the firm, made Caldwell president, and have ever since controlled the company; and the plaintiffs have been powerless in the company.

Eleven-nineteenths of the stock are held by Caldwell and his associates. Eight-nineteenths by others, in the following proportions: Plaintiff Ryan, one-nineteenth, par value $25,500; Plaintiff Eaves, two-nineteenths, par value $51,000; Plaintiff Kuhn, one-half of one-nineteenth, par value $12,750; D. Shire, one-half of one-nineteenth, or one hundred and fifty-seven and one-half shares; C. B. Brace, one-half of one-nineteenth, or one hundred and fifty-seven and one-half shares; Rhea, one-nineteenth, or three hundred and fifteen shares; Harrison, one-nineteenth, or three hundred and fifteen shares. Harrison is dead, and defendant Harrison is his executor. These parties have refused to join plaintiffs in this suit, and are therefore made defendants.

On December 26th, 1868, the city of Leavenworth, pursuant to a vote authorizing the transfer, disposed of its stock in the Missouri River company to the Leavenworth, Atchison & Northwestern company, and on the same day and by like authority the county of Leavenworth made a similar disposition of its stock. The Leavenworth, Atchison & Northwestern railroad company thus became the holder of stock in the Missouri River company, of the par value of $500,000.

Caldwell and his associates had already obtained control of the Leavenworth, Atchison & Northwestern company; they at once fraudulently surrendered this stock to Smith and the directors of the Missouri river company.

The certificates were canceled, and new certificates issued in place thereof, for $250,000 to Lucien Scott, and $250,000 to H. L. Newman, as trustees.

Newman & Scott paid no consideration for these certificates, and they were issued in lieu of the city and county shares which had been transferred as above stated.

Newman claims that he holds his shares in trust for the nineteen stockholders of the L. A. & N. W. railroad company, and Scott claims to hold his in trust for that company

itself. Both refuse to bring suit, or allow the plaintiffs to bring suit in their names, to compel Caldwell and his associates to account.

Scott refuses to allow the plaintiffs to see or take a copy of the certificates issued to him. Newman has furnished a copy held by him, which was annexed to the petition as an exhibit.

Ever since the L. A. & N. W. R. R. Co. was organized, Caldwell and his partners have managed it in their own interest, and to prevent themselves from being called upon to account to the Missouri River company, or to the L. A. & N. W. company, as stockholders therein, for the money and property they had obtained by means of the proceedings and practices before detailed, and the L. A. & N. W. company, as a corporation, though requested by the plaintiffs, has refused to call them to an account by suit or otherwise; this refusal being the result of the control of the partners over the latter corporation.

Of the board of directors in office when the bill was filed, seven out of eleven are members of the firm, and one of the others — Martin — has a mere nominal interest in the concern. He has been kept in office by the firm because he is dependent upon them; holds his office in this company and an office in the Missouri river company by their appointment, and is wholly under their control, and will do whatever they want him to do.

During the construction of the L. A. & N. W. road, assessments were made on its stock to the amount of eighty per cent. of its par value. On this Ryan has paid $23,500, Eaves $47,000, and Kuhn $11,750, and they have received certificates of their stock as paid in full.

The L. A. & N. W. road was completed to Atchison in September, 1869. It was leased to the Missouri company for twenty years at $55,000 per year. It was operated under that lease until September 28th, 1870, when the lease was canceled and a new one made at $42,500 a year, or forty-five per cent. of the gross earnings if exceeding that sum. Of this rent, $35,000 has been applied to pay the interest on the first-mortgage bonds of the company. The balance has been paid over to the directors who belong to said firm, and kept by them.

No dividends have been declared and no profits divided among the stockholders of the L. A. & N. W. R. R. Co., as

such, nor have any such profits ever been received by the plaintiffs.

The plaintiffs charge that if Caldwell and his partners were compelled to account for and pay over to the Missouri River railroad company the money and property they have fraudulently acquired, and the same could be equitably distributed, the L. A. & N. W. Co., as stockholders in it, and the plaintiffs as stockholders in the L. A. & N. W. Co., would receive a large amount of money and property equitably belonging to them, and their stock would become of par value, or more; but by the fraudulent practices of Caldwell and his associates, they are unable to obtain what is justly due them as such stockholders, or any dividend on account of their stock, and their stock is greatly depressed below its actual value and they are unable to dispose of the same at a fair value, or to realize anything like what it is worth, either on it, or from its sale.

The plaintiffs have sought to obtain their rights through the company, but have failed to do so, because Caldwell and his associates have control of it, and for the same reason, the company has not brought and will not bring any action against these parties, which will be effectual in compelling them to disgorge.

The Missouri River company refuses to allow these plaintiffs any inspection of its books or papers, and the L. A. & N. W. company refuses to allow the attorneys of the plaintiffs to inspect its books or papers, or to allow the plaintiffs to make copies therefrom.

The facts charged in this petition as to the existence of the partnership between Caldwell and his associates; the manner in which their contract for the Missouri River railroad was obtained; the issuing to them of the $700,000 in stock, without consideration in that company, were not known to or discovered by any of the plaintiffs before the year 1872; nor was the manner in which they obtained the lands of the Delaware diminished reserve, nor the manner, purpose or object with which they became stockholders in the L. A. & N. W. railroad, nor any of the facts charged in the bill as constituting the fraudulent practices of Caldwell and his associates, against which relief is sought, known to or discovered by any of the plaintiffs before the year 1872, when they were brought out, in part by the published testimony of Caldwell, in a suit between Shoemaker, Miller & Co., and Wm. A. Simpson, nor were they known to or discovered by

the city and county of Leavenworth, or by any one interested in compelling an account to be taken, or obtaining any relief against these practices, before that year.

The petition alleged that all parties in these fraudulent transactions have been non-residents of Kansas, and absent therefrom, during all the time since the organization of the copartnership, except Smith, Caldwell, Scott, Wilson, Insley, and Martin, and each of the last named has, during that time, departed from this state and been absent therefrom for more than one year of that time; that the L. A. & N. W. railroad company, about November 4th, 1870, conveyed all its property, by mortgage, to secure its first-mortgage bonds, to McPherson, Scott, and John A. Stewart, trustees; that McPherson is dead, and that the defendants Scott and Stewart are the surviving trustees; that Thomas L. Price, one of the associates and partners of said Caldwell in the copartnership, is dead; that Caroline V. Price is his widow, and Thomas B. Price his only child; these are also his executors.

The petition prayed for a decree declaring the contract for the construction of the Missouri River railroad void; declaring the $700,000 of stock issued to Caldwell and his associates void; appointing a receiver in this action; decreeing that the copartners account for the lands conveyed to Caldwell for the firm aforesaid, and for the city and county bonds and proceeds thereof, received by them, and for the $500,000 first-mortgage bonds received by them; that they be allowed credit for their actual and necessary expenditures in building the road or otherwise, and charged with all the money and property received from the above sources and from the sale of lands; that they convey all the lands remaining unsold to the receiver, for the use and benefit of the company and its stockholders; turn over all securities received on the sale of such lands, and all moneys and securities held or received by them, and equitably belonging to the company, to the receiver; that he collect all unpaid securities and obligations so turned over to him, and whatever may be found due from them on such accounting; that the L. A. & N. W. railroad company be decreed to be the owners of the $500,000 stock in the Missouri River railroad company subscribed by the city and county; that an account be taken between the two companies on that basis; that the proportion of lands, money and property recovered from Caldwell and his associates, and belonging to the L. A. & N. W. railroad company, be decreed

to the latter, and the shares of the same belonging to the latter company be vested in them. The petition also asked for general relief.

Four separate demurrers were filed on the part of different defendants to the original petition. On June 14th, 1875, with consent of defendants, the original petition was withdrawn by the plaintiffs, and with like consent the amended petition filed. With assent of all parties the demurrers so heretofore filed were then re-filed as demurrers to the amended petition. The several demurrers were expressed in the same language. They set forth, as causes of demurrer to the petition, that the plaintiffs had not capacity to sue; that there was a defect of parties plaintiff and defendant; that the several causes of action were improperly joined, and that the petition did not state facts sufficient to constitute a cause of action. The demurrers were sustained by the district court, but upon what point is not disclosed by the record. The case is now here for review, at the instance of the plaintiffs.

*Green & Foster*, and *Cobb & Cook*, for plaintiffs in error :

The ground of demurrer that the plaintiffs have not capacity to sue, merely raises the question whether the plaintiffs are persons competent in law to be plaintiffs in an action, and they are to be regarded as such till some disqualification appears, and none appears on this record. The cause of demurrer that there is a defect of parties plaintiff and defendant is not good. If any such defect can be found in the petition, it was the duty of the defendants to point it out in their demurrer, showing what necessary parties were omitted, and, having failed to do so, the demurrer must be overruled. (Story's Eq. Pl., § 543.) If it should appear by the petition that other parties defendant might have been properly added, the plaintiffs were under no obligations to do so, as the wrong-doers are jointly and severally liable. (See *Heath v. Erie Rld. Company*, 8 Blatch. 347.) The ground that several causes of action are improperly joined is not true.

Only one cause of action is stated. A series of fraudulent breaches of trust is stated, all culminating in one cause of action for the recovery of property held by defendants in trust and in part for plaintiffs.

The ground that the petition does not state facts sufficient to constitute a cause of action, is not good; for the contract for the construction of the Missouri River railroad was void. The action of the board of directors, purporting to authorize the making of the contract, took place at a meeting of directors, amounting in number only to a quorum of the board, and two of that number, Smith and Gruber, were members of the copartnership which took the contract, and Smith afterward, as president of the railroad company, executed the contract to Caldwell, in the firm-name of the copartnership and for the benefit of its members, pursuant to such authority, which could have been granted only by the votes of Smith and Gruber. They, Smith and Gruber, as directors, made the contract with themselves as members of the copartnership, and the directors being trustees for the stockholders, the contract is for that reason void. A contract made by an agent for his principal, with himself or by a trustee for his *cestui que trust*, is void, as the directors of a corporation are both agents and trustees for the stockholders. See *Ex parte Bennett*, 13 Beav. (Eng. Ch.) 339; *Butts v. Wood*, 38 Barb. 181; Perry on Trusts, p. 100, §§ 127, 430; *Wardell v. U. P. Rld. Co.*, C. L. J., vol. 5, No. 25, p. 527.

Again, the consideration for the construction provided for in the contract was so grossly extravagant as to raise the presumption of fraud. It was for $500,000 in bonds of the city and county, $300,000 of them to be cashed at par, $500,000 first-mortgage bonds, $700,000 stock of the railroad company, all to build a railroad which the petition shows would not cost more than $600,000. Such a contract between individuals would be presumptive evidence of the imbecility of the promisor, or of fraud upon him, and the terms of such a contract, made by an agent of the promisor, would be abundant evidence of a conspiracy between the

agent and the party he contracted with to defraud the prin-
cipal. And the petition alleges that the contract was made
by the copartners, with intent fraudulently to render the
stock of the corporation valueless, and to acquire all the
property of the company for the copartners. If the con-
tract for construction be declared void, it follows that Cald-
well and his associates will be required to account for all
they have received under color of that contract, being
credited with their expenditures for the benefit of the cor-
poration, so far as the same accrued to its benefit. The $700,-
000 of stock of the railroad company issued to Caldwell, and
received by him for the copartnership, should be declared
void, because it was issued pursuant to said fraudulent con-
tract, and to defraud the *bona fide* stockholders, and without
valid consideration. (*Mechanics' Bank v. N. Y. & N. H. Rld.
Co.*, 13 N. Y. 599; *N. Y. & N. H. Rld. Co. v. Schuyler*, 17
N. Y. 592; 3 Cranch, C. Ct. 425.)

Caldwell took the land described in the petition as trustee
for the Missouri River Railroad Company, the railroad com-
pany having purchased the land by contract and secured the
payment of the purchase money, and Smith having assigned
the contract to Caldwell without authority from the corpora-
tion (his office of president giving him no such authority —
see *Hart v. Stone*, 30 Conn. 94.), and it being an assignment
by himself as president to himself as partner, and Caldwell
paying for it out of funds equitably belonging to the rail-
road company, and being a director of the company at the
time he took the title in trust for the corporation. Caldwell
having taken the title in trust, conveyed to his copartners,
confederates, subject to the same trust. They are, therefore,
each and all bound to reconvey such lands as they or any
of them still have, and to account and pay for all such as
they have conveyed to other parties. (*Bluscorne v. Heathorn*,
1 Younge & Coll. 326; *Gaskell v. Chambers*, 26 Beavan, 360;
43 N. Y. 263; 1 Stockton, 507.)

The stock of the city and county in the Missouri River
railroad company having been sold to the Leavenworth, At-

chison & Northwestern railroad company, that company thereby became entitled to, and in equity the owner of, an aliquot share in all the property and assets of the Missouri River railroad company, whether held in trust, or otherwise. The stock represents all the property and rights of the corporation, whether legal or equitable; (8 Kas. 90; 43 N. H. 520, 531, 533; 13 Cal. 540;) and being transferable, its transfer of course passes the right of action necessary to maintain the rights of the assignee in the property held in trust, and neither the case of *Gray v. Ulrich*, 8 Kas. 112, nor *Crocker v. Bellangee*, 6 Wis. 645, nor any of their kindred cases, are against us on this proposition. They were cases where there was a complete contract between parties capable to contract, but liable to be avoided by extrinsic proof of fraud; but in this case there was no contract whatever between the railroad company and the copartnership, but an agreement by the directors of the company with themselves, which is nothing. The action does not undertake to avoid a contract, but to enforce a trust arising out of fraud by the trustee, committed in acquiring the property; and that such a cause of action is assignable, see Leading Cases in Equity, vol. 3, p. 337; *Baker v. Whiting*, 3 Sumner, 475; Opinion of Story, pp. 482, 483, 484; 2 Story Eq. Jur., § 1050, and note at end of section.

The plaintiffs, being stockholders in the Leavenworth, Atchison & Northwestern company, are entitled to have the rights of that company maintained for their benefit. They have a clear property right; and one having a clear right to property, whether legal or equitable, must have a right of action, either at law or in equity, to maintain it, and no remedy exists in this case but a suit in equity. That an action by a stockholder to enforce the rights of the corporation, when the corporation refuses to do so, or the corporation is in the control of the persons guilty of the wrong to be redressed, will lie, see *March v. Railroad*, 43 N. H. 515; *Sears, et al., v. Hotchkiss, et al.*, 25 Conn. 171; *Kean v. Johnson, et al.*, 1 Stock. 401; *Robinson, et al., v. Smith, et al.*, 3 Paige,

222; *Solomon v. Lainy,* 12 Beavan; 43 N. H. 515; 6 Eng. Rly. Cases, 280; 5 id., 573; 29 Vt. 545; 18 Barb. 312; 8 Blatchf. 347; 18 How. 331.

We think we have shown that the defendants are liable to account to the Missouri River company, for the property in their hands; that it was the duty, to its stockholders, of that company to compel that account, but they were prevented by the defendants, who controlled that company; that when the Leavenworth, Atchison & Northwestern company became the owners of stock in the before-mentioned company, it became the right of that company, and its duty to its stockholders, to enforce that accounting, but the defendants having control of that company prevented such action.

The defendants confess by their demurrer, that they have entered into a combination to take the property of this corporation at the expense of the stockholders; that they are guilty of fraud; that they are trustees, or hold the trust property with notice; that they have taken all the property of the corporation in their names, and appropriated it to their use; that by their fraudulent acts the corporations are in their hands, and can only act when they are willing; and that they will not let either corporation come into court to assert the just demands of its stockholders. In short, they have swallowed the corporations, by getting into power through votes of spurious stock, for which not one cent was paid; that they have formed themselves into a syndicate, tied the hands of the minority of the stockholders, taken the principal, and modestly claim to be the mouthpiece of this enfeebled minority, both in the election of directors and division of profits. Thus stripped and ruined, the *cestuis que trust* can find no redress at the hands of the trustees, and when they come into court they are told *"we are the legal representatives* of the corporations, and you must be heard in court by us the legal representatives; the *cestuis que trust* cannot speak in court."* *This cannot be law.*

In *Jackson v. Ludeling*, 21 Wall., pp. 616, 624 and 625, Justice Strong says:

"The managers and officers of a company, where capital is contributed in shares, are, in a very legitimate sense, trustees, alike for its stockholders and its creditors," etc. "They, accordingly, have no right to enter into or participate in any combination, the object of which is to divest the company of its property or obtain it for themselves at a sacrifice. They have no right to seek their own profit at the expense of the company, its *stockholders* or even its bondholders."

Counsel, in reply to the argument that the transfer of the stock by the county and city of Leavenworth is void for want of authority in the Leavenworth, Atchison & Northwestern company to purchase the same, cited Gen. Stat., ch. 23, § 47, subdivision 2, and Bouvier's Law Dic. (6th ed.), title, *Voluntary Sale;* and, also, argued that though the purchase should be deemed *ultra vires*, yet it would not be void, citing Green's Brice's Ultra Vires, 1st Am. ed., p. 372, note, and cases cited; 44 Iowa, 239; 22 N. Y. 495; 16 Mass. 102; 17 Barb. 378; 14 Kas. 620, 621.

The petition, so far from showing that the statute of limitations had barred the Missouri River railroad company before suit was brought, clearly shows that the statute had not commenced to run against it. (*City of Oakland v. Carpentier,* 13 Cal. 540.)

As to the proposition that it was necessary to allege facts sufficient to show why the wrongs complained of were not discovered, we need only to say that the statute requires no such thing, that such a rule would be wholly impracticable, and there is no authority anywhere to sustain it.

As to the proposition of counsel for defendants, that the action is to be regarded as commenced when the amended petition was filed, we say that the record shows that the action was commenced on the 11th day of March, 1873, and it is an established rule that an amended petition relates to the time of filing of the original petition, and speaks as of that date. (*Hurd, et al., v. Everett,* 1 Paige, 124.)

*J. P. Usher*, for defendants in error, Shoemaker, Scott, Price and Price, Perry, Partridge, Taylor, Duffy, Houts, Richardson, and Harrison:

At this or any subsequent stage of the case, none of the parties in whose behalf this argument is made, are shown to have had any interest, directly or indirectly, in the construction of the Leavenworth & Atchison road. True, the petition speaks of Caldwell's desire and intention to bring his partners in the other enterprise into this, but he had no authority to bring them in, for it is not alleged that his partnership extended to any such thing, and there is no averment that they consented to or knew anything of his acts or representations, or that they ever profited by the enterprise, or united with him in any way in carrying it out.

After the plaintiffs had made their subscription, as they say, the terms and conditions of which are not set out, the county of Leavenworth, December 26th, 1868, *sold and transferred* its $250,000 of the capital stock of the first-named company to the last-named company, and on the same day the city of Leavenworth, in like manner, *sold and transferred* its said stock. There had been an act passed by the legislature of Kansas, in the previous March, authorizing the sale or disposition of this stock, but not specially *to* the Leavenworth, Atchison & Northwestern railway company.

Now, it must be understood from the petition, that the expectation of plaintiffs was, that the stock would be *donated* to their company, but they say it was *sold* to their company, and do not state the price. Their expectations were not met, and here is found their great disappointment—a grand difficulty in their case. The statute under which they were organized (Gen. St., ch. 163, § 11,) authorized the company to purchase such personal estate as the purposes of the corporation should require; also, to take, hold and convey such personal property as it should be requisite for such corporation to acquire, in order to obtain or secure the payment of any indebtedness or liability due to or belonging to the corpora-

25—21 KAS.

tion. Such were its general powers. It is not shown by this petition that the purposes of the corporation required the purchase of this stock, or that it was purchased to secure the payment of any indebtedness or liability. The act of purchasing was *ultra vires*, and forbidden by law. (See Green's Brice's Ultra Vires, p. 95, and authorities there cited.)

By section 47, second subdivision, railroad companies are authorized to take and hold, by voluntary grant, real estate and other property, to aid them in the construction, maintenance, and accommodation of their railways. It was under this statute that Garrison and the plaintiffs expected that the stock would be vested in the company, but if it had been acquired by donation, the company would have been bound to convert it in aid of the construction of its road, for it is not to be tolerated in this state, that one railroad company can lawfully become a stockholder in another railroad company, and so control the operation and management of such road. Such companies may consolidate their roads if they are so situated as to become, when consolidated, continuous lines of road; but it is against public policy to allow consolidation of railroads, or amalgamation of their properties, where they are other than one continuous line.

The sale of this stock to plaintiffs' company was void. By their own showing, the ownership of the stock still remains in the city and county of Leavenworth, which ought to be gratifying to every lover of justice, for if the disclosures of plaintiffs are half true, the county and city of Leavenworth can, by the assertion of their rights, relieve themselves in a great degree of the dreadful embarrassments under which they are now laboring, in consequence of having become subscribers to the stock.

But suppose, as is alleged, that plaintiffs' company is the equitable owner of the stock, and further, that plaintiffs could compel the company, or Wilson and Newman, to transfer to them their *pro rata* share, yet neither the one nor the other can or could maintain a suit against the Missouri River railroad company, or any of the defendants, for the frauds

alleged in the petition, for the plain reason that Caldwell and his associates, as shown by the petition, from first to last professed to be acting for themselves in acquiring the property mentioned, and not for the Missouri River company, in trust or otherwise.

The contract with Caldwell is apparently fair and well executed; one that he could not repudiate for any reason set up in the petition. Plaintiffs, in their brief, say the contract for construction was void, and that "in this case there was no contract whatever between the railroad company and the copartnership, but an agreement by the directors of the company with themselves, which is nothing." Again, they say "the action does not undertake to avoid a contract, but to enforce a trust," &c.

This conclusion is sought to be maintained upon the averment that some of the directors were secretly interested in the contract, but, though that be true, it does not make the contract void. At the utmost it was only voidable. If it had proved a hard contract upon Caldwell, he could not have denied its validity. The contract did not embrace the Delaware lands. They were matter of after-consideration. True, by the treaty, the intervention of the company was necessary to enable Caldwell to get the land.

The question then comes back, was the contract to construct the road void? The plaintiffs, realizing their difficulty in this particular, boldly assert that it was absolutely void, not voidable, and upon that question the judgment of the court must necessarily be pronounced, for if it was not void, under all the authorities before and since the code, the right to declare the contract void is not assignable. That the plaintiffs have well appreciated, hence their bold and dashing declaration that the contract was void. The defendants, by this argument represented, claim that the contract was not void, that for all that is shown in the petition they lawfully united their fortunes with Caldwell in the construction of the road, and that these collateral volunteer plaintiffs have no right to call them to an account; that the very fact that the county

and city retained their stock for some time after the construction of the road, before selling, necessarily with knowledge of the contract with Caldwell, making no complaint, and then sold their stock, ought to be taken as an affirmance of the contract by the city and county. But whether or not, there was no remedy for the county and city, or any other stockholder, except by a direct attack upon the contract, and the right to make such attack by the company, or any stockholder, was not assignable. By universal law, contracts voidable only must be attacked within a reasonable time, and what is a reasonable time is a question of law for the courts.

To avoid this principle of law the plaintiffs plead ignorance. In that they but stultify the Missouri River railroad company, the city and county of Leavenworth, which were the main stockholders, and themselves. It was known to the directors, other than Smith and Gruber, as well as to them, what the contract was. There is no pretense that the contract with Caldwell was concealed from anybody. It was known to everybody that he constructed the road under a contract; that he was not a volunteer. The treaty under which the lands were acquired was a matter of public law, of which the city and county were charged with notice. It is in vain for these volunteer plaintiffs to pretend that the city and county were ignorant that these lands were transferred to Caldwell by authority of the treaty. Caldwell's patent was a matter of public record, bound to be so by law. If he obtained the lands wrongfully, the city and county were charged with notice of it. It was a transaction in open day, and not in a corner.

It is folly to deny that everybody interested was informed of it, or to pretend that they were without the means of information. Caldwell obtained the lands by patents, in hostility to the Missouri River company, with his own means, and those patents cannot be overthrown, except by a direct proceeding.

The right of action to overthrow the patents and to de-

clare the contract for construction void, is not assignable by statute; and if assigned, is, by common law, void. (Story's Eq. Jur., vol. 2, § 1040; *Norton v. Tuttle*, 60 Ill. 130; *Prosser v. Edmunds*, 1 Younge & Coll. 326.)

The contention of these defendants then, is, that these plaintiffs, by their own showing, are not entitled to the favor of a court of equity, for it is manifest that they intended to do the very things for which they complain. Second, that the Leavenworth and Atchison company was not competent or authorized to purchase and become the holder of the stock of the county of Leavenworth. Third, that said county and city are still the owners of the stock, for all that is shown in the petition. Fourth, that the right of action, if any the county and city had against the defendants, was not assignable in any way or manner whatsoever.

But if the foregoing positions are not well taken, there is yet a fatal objection to the petition, taken by the first and second causes of demurrer, that the complainants have not the capacity to sue.

The action is founded upon averments that Caldwell and his co-defendants defrauded the Missouri River railroad company, and that he and they ought to restore to that company the money, bonds, lands, and other assets which he and they received by reason of the frauds practiced.

If the allegations in the petition are true, the company, or one of its stockholders, for the benefit of the company, if the company should, for any improper reason, refuse to sue, as decided in the case of *Dodge v. Woolsey*, 18 How. 331, could maintain a suit to compel the defendants to restore to the company its property so fraudulently obtained. But in this case it will be seen that the plaintiffs are an immeasurable distance from the position they should occupy in order to maintain the suit. They are not stockholders in the Missouri River railroad company, and though they are stockholders in the Leavenworth and Atchison company, yet that company is not a stockholder in the Missouri River railroad company. They are two or three removes from the position

which they should occupy to maintain this suit, and though they say that Wilson & Newman hold the stock in trust for the company, yet they have no prayer that the stock be transferred by Newman and Wilson to the company, and if they had, that company could not maintain this suit until the stock was thus transferred.

The decision of Judge Blatchford in the suit of *Heath v. The Erie Railway Company*, 8 Blatch. 347, cited by plaintiffs as authority, is directly in point upon this last proposition. It is doubtless sound law, and upon that full reliance is placed to sustain the judgment of the district court.

*Clough & Wheat*, for such defendants in error as have been served with process in error herein, or for whom service has been waived in this court:

We claim that plaintiffs have not, as stockholders of a pretended stockholder of the Missouri River railroad company, a right to maintain this action as a stockholder of the Missouri River railroad company, and that they do not state a cause of action of which they can be heard to complain.

As we read it, there is nothing in the petition showing a transfer from the city and county of any supposed cause of action in their favor against any of the defendants; and we do not understand plaintiffs to pretend that any cause of action has accrued against any of the defendants since the city and county transferred their stock to the Leavenworth, Atchison & Northwestern railroad company. And further, even if the city and county had pretended to transfer to that company any supposed cause of action for relief on the ground of fraud, we claim that such transfer would have been void. (*Gray v. Ulrich*, 8 Kas. 112, 122; 60 Ill. 130; 9 Foster, 533; 6 Wis. 645; 16 Ill. 214; 14 Wall. 279; 19 Ohio St. 321; 32 Iowa, 420; 27 Wis. 414; 36 N. Y. 144, 148, 149, 319; 37 N. Y. 218.)

The Leavenworth, Atchison & Northwestern railroad company could not, nor can any stockholder thereof, maintain any action because of the alleged fraud, even if the Missouri

River railroad company or the city and county could have done so (which we deny), before they so transferred their stock.

If we understand it right, there is nothing in the petition indicating a lack of knowledge or want of information on the part of the Missouri River railroad company, or its officers and agents, of any alleged fraud, or pretended fraudulent transactions, from the time of the supposed commencement thereof.

If there is or ever was any cause of action in favor of any party, because of any alleged wrongful act on the part of or committed by any of the defendants, such cause and causes of action are causes of action in favor of the Missouri River railroad company only. Of course, a stockholder, as such, can prosecute such a suit as this, if at all, merely for the benefit of the corporation. A stockholder of the Missouri River railroad company, as such, has no cause of action for anything stated in the petition. In any event, he can only seek an enforcement of a supposed remedy of the corporation for it as its cause of action.

The petition does not state facts sufficient to authorize plaintiffs to maintain the action, and would not even if they were stockholders in the Missouri River railroad company. (39 Cal. 320; 104 Mass. 378; 12 Metc. 384, 385; 1 Woolworth, 401, 418, 419, 420; 13 Ohio St. 544; 8 Cush. 590; 26 Conn. 456; 24 Mich. 469.)

Counsel also argued that the alleged frauds had been so long waived and acquiesced in as to bar the plaintiffs from the prosecution of their suit, irrespective of any statute of limitations, citing 36 Ill. 306, 396; 1 Curtis C. C. 206, 390; 14 Me. 57; 3 Keyes, 472; 16 Mich. 40; 3 Story, 610, 629; 6 Allen, 52–57; 10 Cush. 252, 253; 1 Allen, 166; 14 Me. 57; 1 Story's Eq., § 1520, note 1, p. 734 (9th ed.); 16 Ill. 216. And that the action is barred by the statute, citing 17 Kas. 612; 15 id. 579; also, 30 Md. 55; *Wych v. East India Co.*, 3 P. W. 309, 310.

Counsel contended further, that to make a good petition,

it was not only necessary for plaintiffs to have alleged that the Missouri River railroad company did not discover such alleged fraud until within two years before suit was brought; but it was necessary for them to allege and state facts sufficient to show why the Missouri River railroad company did not, and why they and the Leavenworth, Atchison & Northwestern railroad company did not sooner discover the alleged fraud; and to give and show sufficient reasons why they, the plaintiffs themselves, and said Leavenworth, Atchison & Northwestern railroad company, and the city and the county of Leavenworth, and said Missouri River railroad company, could not, with reasonable care and diligence, have sooner discovered the alleged fraud. This, because reasonable opportunity to discover is equivalent to knowledge, notice, etc., in such cases. (7 How. 829; 41 Ala. 68, 69; 25 Ind. 568; 31 Ind. 14, 18; 24 Ind. 339; 41 Ill. 195; 21 Wis. 88, 432; 23 Ind. 568.) And in this connection, see the cases above cited about lapse of time, and also, 9 Pick. 213; 7 Johns. Ch. 90, 114; 4 Cow. 718; Angell on Lim., p. 191, § 188 (5th ed.), § 190 and note 1, § 187 and notes, § 185 and notes, and ch. 18. And in the same connection, and as supporting the same proposition, as to the effect of means of acquiring knowledge, etc., see 29 Ind. 580; Broom's Legal Maxims, 609, 613; 2 Bibb, 602; Chitty on Con. 751; 23 Pick. 256; 7 Blackf. 102; 19 Ga. 432; 5 Hill. 308; 4 B. & C. 512; 2 Ired. 32; 5 Blackf. 18; 2 East, 469; 1 Dev. 69; Chitty on Con. 751, note *p.*, (10th Am. ed.); 41 Ala. 69; 1 Story's Eq., § 200 *a*; and also, 34 Barb. 367.

And now as to when the action was commenced, we claim, that the action as to the supposed causes of action in the amended petition stated was commenced on, and not before, the 14th day of June, 1875, the day the amended petition was filed. On page 74 of the record it is stated, that plaintiffs, on the 14th of June, 1875, withdrew their petition, and then filed their amended petition. The old or first petition is gone—taken from the court by plaintiffs themselves. (So far as consent of defendants is concerned, they doubtless would

now consent to the withdrawal of the suit altogether.) There is nothing to show what was stated in the said withdrawn petition. We submit, there can be no presumptions in relation to that matter, and that the suit was commenced on, and not before, the 14th day of June, 1875, as to and so far as any question of statute of limitations is concerned. In this connection, see 3 Kas. 412, 414, *Hiatt v. Auld*, 11 Kas. 176, 184, and cases there cited. See, also, 7 Peters, 171; 33 Md. 308; 6 Peters, 61; 37 Me. 563; 34 Miss. 437; 14 Penn. St. 314; 6 Watts, 528; 10 B. Mon. 84; 3 Ired. (Eq.) 585; 29 Ala. 528; 32 Ala. 626; 27 Ala. 326, 532; 6 Paige, 665; 10 Ind. 184.

On the 7th of February, 1876, the Leavenworth, Atchison & Northwestern railroad company, the Missouri River railroad company, Leonard T. Smith, Alexander Caldwell, Lucien Scott, Levi Wilson, William A. Martin, C. B. Brace, M. H. Insley, H. L. Newman, Paul E. Havens, Oliver A. Hart, Charles R. Peck, Daniel R. Garrison and John A. Stewart, by their attorney, entered their appearance in this proceeding in error as shown at the end of the transcript, but as we understand it, the other defendants in error have not entered their appearance herein, nor has service of a summons in error been had on them, and therefore we submit the court cannot now hear this case, and should dismiss it; and we move the court to dismiss it for that reason. (16 Kas. 139; 10 Kas. 204, 394; 11 Wheat. 414; 13 Ohio St. 568; 1 Ark. 73–78; 6 S. & R. 315; 20 Ala. 280; 12 Miss. 732, 735; 13 Ohio St. 568; 1 Porter, 277; 12 How. 337; 3 Day, 144; 2 Dana, 428.)

The opinion of the court was delivered by

HORTON, C. J.: The first and most important inquiry in this case is, whether upon the allegations of the amended petition the contract made by Len. T. Smith, in the name of the Missouri River railroad company, with A. Caldwell, for the construction of the railroad of that company from Wyandotte to Leavenworth, was fraudulent and void? If fraud-

ulent and void, the next inquiry is, are the plaintiffs, who are stockholders in the Leavenworth, Atchison & North-western railroad company, in a position to maintain this suit? In answering and passing upon these inquiries, and matters incident thereto, we will consider whether the petition states facts sufficient to authorize the plaintiffs to maintain their action, and, also, all the material points presented in the arguments of counsel.

The allegations of the petition in relation to the alleged fraudulent contract for the construction of the railroad of the Missouri River railroad company, are substantially as follows: The capital stock of the company was originally only $200,000. On May 13th, 1865, the stock was increased to $1,000,000. To the original capital stock there was subscribed on or about April 6th, 1865, the sum of $48,500. Of this sum, $970 was paid at the time, and nothing has ever been paid thereon since. In May, 1865, the city of Leavenworth, under authority of law, subscribed $250,000 to the stock of the company, and, in June following, issued $250,000 in bonds, paid its subscription, and received its certificate of stock. In July, 1865, the county of Leavenworth, under like authority, subscribed $250,000 more to the stock of the company, issued $250,000 of its bonds, paid the subscription, and received its stock certificates. After the city and county had paid for their stock, an association, composed of Thomas A. Scott and fourteen other persons, agreed among themselves, if they could complete the arrangements, to build the road on the following terms, viz.: For the bonds issued by the county and city of Leavenworth in payment of their stock, being $500,000 in all, if $300,000 of these were cashed at par by citizens of Leavenworth, for $700,000 in stock of the railroad company and $500,000 in bonds of the company. The road when completed was to be leased to the Missouri Pacific company, most of whose officers and directors, with other officers of prominent railroads, were engaged in this association or copartnership. In pursuance of this agreement with each other,

*Statement of facts.*

Thomas A. Scott and A. Caldwell appeared before the board of directors, two of whom were members of the said association; and offered on behalf of themselves and their associates, whose names were concealed, to build the road on the terms above stated, and as agreed upon among the copartners. At the meeting only a bare quorum was present, and two of the quorum, Smith and Gruber, were president and treasurer of the company, and at the same time members of the partnership seeking to obtain a contract to build the road, and among the *concealed* associates for whom Scott and Caldwell made the proposal. The board of directors at said meeting referred the matter to Smith, the president and a member of the partnership, and authorized him to make a contract for building the road. To conceal the nature of the transaction, it was agreed among the partners that the contract should be in the name of A. Caldwell, but that the others should be secret partners with him, and their interest concealed from public knowledge. The name "A. Caldwell" was used for the firm, and in that name the contract as originally talked over among the partners, and as agreed upon by them, was executed on the part of the partners with Smith, also one of the partners, but acting as president and agent of the railroad company. To conceal the character of the transaction, Caldwell transferred the contract to D. R. Garrison & Co., and under the latter name the work was done. This transfer was merely colorable; the work was performed, expenses paid and profits divided by Caldwell and his partners. D. R. Garrison & Co. represented Caldwell and his associates. Before anything had been done in performance of the contract on the part of the partners, $700,000 in stock of the company was issued to Caldwell and his associates without other consideration than said contract. Of this stock, $200,000 was in excess of the capital stock of the company, as $500,000 of stock had been issued previously to Leavenworth county and city, and the capital stock was only $1,000,000. This stock was issued prior to the Janu-

ary election of 1866, and at that election was voted on. At this election Thomas A. Scott, Alexander Caldwell, Len. T. Smith, E. H. Gruber, Daniel R. Garrison, Charles H. Peck, Oliver A. Hart and Thomas L. Price, members of said co-partnership, and all interested in said contract, together with Charles N. Palmer, Alexander McDonald and M. S. Grant, were elected directors of the corporation, L. T. Smith was reëlected president, and E. H. Gruber elected secretary. About January 1st, 1866, before the work of construction had been commenced, the bonds of the company to the amount of $500,000 were issued to Caldwell and his part-ners, secured by a first mortgage on the road and all the property of the company, on hand or to be acquired, Cald-well being the trustee in the mortgage. After the copart-nership had thus obtained control of the corporation, and had within its members a majority of the directors, the con-struction of the railroad between Wyandotte and Leaven-worth was commenced, and a road about nineteen miles in length built, at a cost not exceeding $500,000. Not includ-ing the value of $700,000 of the stock of the corporation issued to the partners, the members of this copartnership, without the use of any means of their own other than that gathered by their arts from the city and county of Leaven-worth and the corporation, realized over $400,000 in their construction of the road. With $250,000 of this money they paid for 92,598$\frac{33}{100}$ acres of land, worth $14 per acre, known as the Delaware Diminished Reserve, which lands, under a treaty ratified August 10th, 1866, the said railroad corporation had the precedent right to purchase at $2.50 per acre. The president of the corporation, with intent to de-prive his company of the benefits to accrue from completing the purchase of said lands, and fraudulently to obtain the same for the partnership, made a conveyance of these lands to Caldwell, in the name of his corporation, without consid-eration, and as such president induced the secretary of the interior to issue the patent for them to Caldwell. The sum

of $165,000, arising from the sale of some 8,000 acres of these lands, was divided among the original partners, and the balance of the land disposed of among the same persons.

It is further alleged in the petition, that after the said partnership was formed, and before the execution of the contract for the construction of the road, certain persons, who were responsible, and able to give good security for the performance of their contract, made an offer in writing to the president and treasurer of the corporation to do the clearing, grubbing, grading, masonry and track-laying of the entire road, and furnish materials therefor, for $300,000; (had this been done, the whole cost of the road would not have exceeded $18,000 per mile;) that the said partnership was formed and the construction contract made with the intent of the members of the firm, who were officers and directors of the corporation, and of such as immediately afterward became directors and officers of the corporation, and of those jointly interested with them in the contract, to depreciate and render valueless the stock owned by Leavenworth county and city, to defraud said stockholders of their property, and to acquire for the partners so associated together the control of the corporation and all its effects; that the more favorable proposals from other parties were rejected, and the terms of the contract so unfavorable to the corporation, agreed upon to defraud the latter, and carry out the purposes and plans of the conspirators.

In view of these statements, we can arrive at no other rational conclusion, than that the said contract, executed by Smith, on the part of the Missouri River railroad company, and A. Caldwell, for himself and his partners, was a gross fraud upon that corporation, and upon its stockholders who were not interested in the contract. This contract was secured through the votes and influence of members of the directory, who were directly interested in the procurement of such contract; and the president of the corporation, in executing the same, while nominally representing the corporation, was really acting adverse to its interests and the interests

of its stockholders, and in the promotion of gain to himself and his copartners. · The elementary text-books of authority on the subject of corporations lay down the rule, that the fiduciary character of directors is such, that the law will not permit them to manage the affairs of the corporation for their personal and private advantage, when their duty would require them to work for and use reasonable efforts for the general interests of the corporation and its stockholders and creditors. The directors are the primary agents of the cor-

1. Directors of a corporation, its primary agents and trustees; corporate affairs, not to be managed for their private advantage.
poration, and this relation requires of them the highest and most scrupulous good faith in their transactions for the corporation; and the general rule, that no trustee can derive any benefit from dealing with these funds of which he is a trustee,
applies with still greater force to the state of things in which the interest of the trustee deprives the corporation of the benefit of his advice and assistance. Courts of equity always regard with great jealousy the contracts made between directors and the corporation, and, as a general rule, such contracts are voidable at the instance of the corporation or stockholders. This doctrine applies, whether the directors are a party to the contract in its inception, or whether they subsequently acquire an interest in it. As directors cannot acquire an interest, directly or indirectly, adverse to the corporation, if they, taking advantage of their knowledge and position, make even an advantageous bargain in the purchase of claims against the corporation, the profits thus made will be treated as held in trust for the company. (Field on Cor., §174, 175, 396, 397; *Hale v. The Bridge Co.*, 8 Kas. 466.) In conclusion upon this point, applying to the allegations of the petition the law as above stated, holding the contract void, we may very appropriately adopt the language of Mr. Justice Miller, in the case of *Wardell v. Union Pacific Railroad Company, et al.*, C. L. J., vol. 5, 527 :

"The corporation was represented by an agent who controlled both sides of the contract, and whose interest was in every way against his principal and in his own favor. While

the glaring evil of this thing may be obscured by using the name of the corporation as one party and that of individuals having no connection with the corporation as the other party, the danger that selfish greed will make for the agents of the corporation a contract of which they will reap the advantage, and in which the corporation will suffer all the losses, is only increased by the fact that the names of the parties really interested do not appear in the transaction."

In this connection we may properly remark, that if persons other than directors and officers of the corporation participated with them in their fraudulent and illegal transactions, with full knowledge of all the facts, as is alleged, they are equally liable with the faithless agents and officers.

2. Contract, when fraudulent and void; corporation may call its officers to account for abuse of trust; liability of participants in frauds. "In the discovery of frauds and in furnishing remedies to parties defrauded, equity holds all parties to their just responsibility, following trust property into the hands of remote grantees and purchasers, who have taken it with notice of a trust, in order to subject it to the trust." (*Peabody v. Flint*, 6 Allen, 52.)

We come next to the inquiry, whether the plaintiffs are in position to maintain this suit? Counsel contend that the Leavenworth, Atchison & Northwestern railroad company was not competent or authorized to purchase and become the holder of the stock of the county and city of Leavenworth, and that the county and city are still the owners of the stock originally issued by the Missouri River railroad company for the bonds of said county and city. The amended petition shows that the Leavenworth, Atchison & Northwestern railroad company was incorporated in 1868 to build a railroad from Leavenworth to Atchison, and thence northwest. The capital stock was first fixed at $500,000, and afterward increased to $600,000. On December 26th, 1868, Leavenworth county, pursuant to a vote authorizing the transfer, sold and transferred its $250,000 of stock in the Missouri River railroad company to the Leavenworth, Atchison & Northwestern railroad company, and on the same day, and by like authority, the city of Leavenworth made a similar

disposition of its $250,000 in the Missouri River railroad company. There had been an act passed by the legislature of the state, in the previous March, authorizing the sale or disposition of this stock. The statute under which the Leavenworth, Atchison & Northwestern railroad company organized, authorized the corporation to hold and purchase . . . such real and personal estate as the purposes of the company required. (Ch. 23, Gen. Stat.) And section 47, subdivision 2 of the same chapter, further empowered the corporation to take and hold such voluntary grants of real estate and other personal property as should be made to it to aid the construction, maintenance and accommodation of its railway.

In view of these powers so conferred by law, the act of purchasing said stock by the Leavenworth, Atchison & Northwestern railroad company of the county and city of Leavenworth, was not *ultra vires*. While it is not shown by the petition that the purchase of this stock was necessary for the purposes of the corporation, in the absence of any statement to the contrary, we are to presume the company was acting within the terms of its authority and power. The statute permitted the corporation, under some circumstances, to purchase and obtain various kinds of property, and in the absence of any motion to make the petition more definite and certain, we must assume the purchase was legitimate and proper; but we do not by any means intimate that the corporation had the right to buy the stock as an investment, or for purposes not connected directly with the use of the road. The attempt to construe the language of subdivision 2 of said sec. 47, as authorizing the corporation to take and hold any such real and other property as the company might obtain without consideration, is an effort to give a forced and strained construction to the words of the statute, contrary to the well-defined meaning of "voluntary grants." Nor is the argument tenable, that the Leavenworth, Atchison & Northwestern railroad company could not lawfully become a stockholder in the Missouri River railroad

3. Right of railroad corporation to purchase and hold real and personal property; right to purchase stock in connecting railroad line.

company, as such an act would be contrary to public policy. The Missouri River railroad runs from Wyandotte to Leavenworth, and the Leavenworth, Atchison & Northwestern railroad from Leavenworth to Atchison — the two roads connecting at Leavenworth. Neither the interests of the public nor the interests of the companies would be sacrificed or prejudiced necessarily, if the roads were operated under one management, or if the two companies were consolidated upon equitable terms, so as to have a continuous line of railroad from Atchison to Wyandotte. That the law-makers of the state apprehended no such danger to the public as claimed by counsel from such an act, is apparent from the legislation of 1870 and 1873, permitting the consolidation of railroad companies, and empowering such companies to purchase and hold stock in connecting corporations. (Laws 1870, ch. 92, § 1; Laws 1873, ch. 105, § 1.)

Another objection is made to the right of the plaintiffs to maintain this suit, on the ground that although they are stockholders in the Leavenworth, Atchison & Northwestern railroad company, that company is not a stockholder in the Missouri River railroad company, because after the Leavenworth, Atchison & Northwestern railroad company had purchased the stock of Leavenworth county and city in the Missouri River railroad company, the certificates thereof were canceled, and new certificates issued in their place to Lucien Scott for $250,000, and H. L. Newman for the other $250,000, as trustees; and it is urged that the action should be against Scott and Newman for a division of the stock, or a transfer of the same back to the Leavenworth, Atchison & Northwestern railroad company. Now, as the allegations charge that the stock was fraudulently surrendered to the president and directors of the Missouri River railroad company by Caldwell and his associates, and new certificates issued to said Scott and Newman, as trustees, without consideration, the said Leavenworth, Atchison & Northwestern railroad company are still the equitable owners of this stock, and the legal title is held by said Scott and Newman, simply

26 — 21 KAS.

as trustees for the company. The fraudulent transfer of this stock to Scott and Newman gives us another exhibition of the trail of the serpent, winding its sinuous course over and around the unlawful proceedings of the manipulators of these corporations, but cannot deprive the Leavenworth, Atchison & Northwestern railroad company of its rights, nor despoil innocent stockholders of their property. Both of these trustees refuse to protect the interests of the Leavenworth, Atchison & Northwestern railroad company, and of its stockholders, and as said trustees are before the court in this case, with the other parties, we see no good reason, or any rule of equity, which requires two suits, instead of one, to obtain the same results. Equity does not suffer technicalities to stand in its way, but seizes upon the substance of the case. Virtually, the Leavenworth, Atchison & Northwestern railroad company are the owners of the stock in the name of Scott and Newman. The plaintiffs are stockholders of that company, and are interested in protecting and augmenting the value of such stock, and Scott and Newman being only trustees for the company, no separate suit is required against them for a division or transfer of the shares. All the questions involved can be completely determined and settled in this action. Notwithstanding the decision in _Heath v. Railway Company_, 8 Blatch. 347, we more readily adopt this conclusion, in view of the liberal provisions of our code relating to parties and practice.

5. Railroad corporation, owning stock in connecting railroad line, and both controlled by same officers; fraudulent cancellation of stock; action for accounting.

Again, it is urged that there is nothing in the petition showing a transfer from the county or city of any cause of action against any of the defendants to the Leavenworth, Atchison & Northwestern railroad company, or the plaintiffs, and that therefore the plaintiffs cannot maintain the suit. This objection is also untenable. The Leavenworth, Atchison & Northwestern railroad company purchased the stock of the county and city, and thereby received the stock with all its incidents, and among these is the right to receive all dividends after the date of such purchase and transfer — that is,

its proportional share of all profits not then divided; and it
is immaterial at what times or from what sources
these profits have been earned.   It is wholly im-
material whether they have accrued from rents,
the profits of the construction of the road, or
from the sales of lands equitably belonging to the company:
they are all incidents to the shares to which the Leavenworth,
Atchison & Northwestern railroad company, as a purchaser,
became at once entitled, provided it remains a member of the
corporation until a dividend is made.   The charge is, that no
dividend has been declared by said Missouri River railroad
company, nor any profit divided, although large sums have
been realized, because all of said sums have been seized
and converted by the directors unlawfully.   The purpose of
this suit is to restore to the latter company its funds, moneys
and property in the possession of wrong-doers, so that after
the creditors of the company (if there are any) are paid, divi-
dends may be divided and distributed to the stockholders.
If the $700,000 of stock issued to the conspirators is fraudu-
lent, the Leavenworth, Atchison & Northwestern railroad
company owns about all of the valid stock in the Missouri
River railroad company.   As it is the right of the former
company to share in the profits of the latter company in the
proportion which the stock it owns bears to the whole capital
stock used in the enterprise for which the latter corporation
was organized, so said former company, by its purchase of
the stock of the county and city of Leavenworth, and as in-
cident to the ownership thereof, had the right (upon the
refusal of the Missouri River railroad company) to institute
and maintain an action, as a stockholder, for the benefit of
the latter corporation.   If both corporations are under the
control of the defendants, and refuse to bring the suit, on re-
quest, then the plaintiffs, as stockholders in the Leavenworth,
Atchison & Northwestern railroad company, have this right;
and as both of these corporations are necessary parties to the
suit, and an excuse is given for the bringing of the suit by the
plaintiffs, which is equivalent to a refusal by the directors of

*6. Right of stock-
holders to
dividends; as-
signment of
stock transfers
this right.*

the Missouri River railroad company, on request, to bring the suit, and as the Leavenworth, Atchison & Northwestern railroad company has refused, on request, to bring suit, the plaintiffs, as stockholders in the latter company, have this right. The rights of the county and city were transferred with their stock, and as an incident thereof. If any other rule were adopted, the plaintiffs would be denied all relief, and the wrongs of which they complain would go unredressed. Even if the directors and officers of these corporations were willing to prosecute, it would be a mockery to permit a suit against themselves to be brought and prosecuted under their management to obtain the relief sought in this action. (*Heath v. Railway Company*, supra; *Peabody v. Flint*, supra; *March v. Eastern R. R. Co.*, 40 N. H. 548; *Dodge v. Woolsey*, 18 How. 341; *Robinson v. Smith*, 3 Paige, 222.)

On the part of the resident defendants, it is insisted that the action is barred by the two-year clauses in section 18 of the code, and was so barred before the transfer by the county and city of their stock. Assuming that the action comes within the provision of the third subdivision of said section 18, still the statute excepts the plaintiffs from the limitation until a discovery of the fraud. It is alleged that this discovery was not made on the part of the county and city of Leavenworth, or on the part of the plaintiffs, until 1872. The circumstances under which the fraud was discovered do not constitute any part of the cause of action and need not be stated, even where a discovery must be alleged to avoid the apparent bar of the statute of limitations. (*K. P. Rly. Co. v. McCormick*, 20 Kas. 107.) It was not necessary to allege that the Missouri River railroad company and the Leavenworth, Atchison & Northwestern railroad company, or either of them, did not discover the frauds of the defendants until within two years next before the suit was commenced, as the allegations of the petition show satisfactorily that these companies were and continue to be under the actual potential control of the wrong-doers, who are necessary defendants; and knowledge on the part of the guilty

8. Statute of
limitations;
discovery of
fraud; notice.

officers and agents of the corporations of the fraudulent acts and conduct of themselves and guilty associates, is not notice to the corporation or its stockholders, so as to give the advantage of this notice to such agents and associates. (*City of Oakland v. Carpentier, et al.,* 13 Cal. 540.) Upon this point, the counsel of plaintiffs well say: "The defendants are estopped from setting up their own laches in failing to sue themselves. Nor can they be heard to claim that the corporation had notice, on the ground that when they committed the wrongs it had full notice of what they were doing. They were the eyes, the ears and the hands of the corporation, through which alone it could see, hear or act." As the action was commenced on March 11th, 1873, and the discovery had in 1872, the action was brought in time. Counsel for said resident defendants here again intervene, and claim that this suit was only commenced on June 14th, 1875, as the plaintiffs on that day withdrew their original petition and filed the amended petition. The original petition was withdrawn and the amended petition filed by leave of the court and with consent of the defendants, and the demurrers filed to the original petition were re-filed to such amended petition. The action is prosecuted by the same parties against the same defendants named in the original petition, and the record states the original

9. Computation
of time.

petition was filed in this action, not some other. We construe the amended petition to relate back to the time of the filing of the original petition, and that it speaks as of that date.

The allegations of the amended petition were admitted by the demurrers interposed, and clearly presented to the court below a case calling for the exercise of its remedial powers in behalf of the plaintiffs and of the Leavenworth, Atchison & Northwestern railroad company. If the conspirators are compelled to return to the Missouri River railroad company the moneys and property which belong to it, its treasury may be filled to overflowing; its stock may appreciate to great value; and the Leavenworth, Atchison & Northwestern

railroad company, as the owner of a large amount of its stock, may be greatly benefited. The plaintiffs, as stock-holders in the latter corporation, will be the direct recipients of these benefits, and hence have a personal interest in an accounting between the Missouri River railroad company and its officers. Ample facts are stated in the petition to authorize the plaintiffs to maintain their action. In view of the prayer to the petition, we add that the claims of the plaintiffs, as stockholders in the Leavenworth, Atchison & Northwestern railroad company, are subordinate to the claims of the creditors (if there are any) of that company; and likewise the claims of said corporation, as a stockholder in the Missouri River railroad company, are also inferior to the claims of the creditors (if there are any) of the latter company. Hence, if upon an accounting with the copartners, any moneys or other property be obtained for the Missouri River railroad company, the Leavenworth, Atchison & Northwestern railroad company will not be entitled as a stockholder to a division until all the debts (if there are any) of the Missouri River railroad company are paid, and if any dividends or profits are decreed to the Leavenworth, Atchison & Northwestern railroad company from the assets of the Missouri River railroad company, the plaintiffs, as stockholders in the Leavenworth, Atchison & Northwestern railroad company, will not be entitled to share therein until the debts (if there are any) of the latter company are paid. Of course, we know nothing of the facts in this case except as they are stated in the amended petition; but for the purposes of the case we are compelled to take such statements as true, and have commented accordingly.

*marginal notes:*
4. Each stockholder of corporation a cestui que trust as to its property and effects; action against officers for frauds.

7. Claims of stockholders, subordinate to claims of creditors.

The order and judgment of the district court sustaining the several demurrers will be reversed, and the cause remanded with direction to the court below to overrule the said demurrers, and each of them.

All the Justices concurring.