WILLIAM P. BORLAND, *et al.*, v. MILTON E. CLARK, *et al.*

NATIONAL BANK, *Valid Contract as to Capital Stock of.* B. and S. were the owners, upon the books of a national bank, of all the capital stock thereof, but a portion of the stock, held by B. in his own name, belonged to his minor children, and one H.; this secret ownership, however, was unknown to S. After a vote of the shareholders to put the bank into voluntary liquidation, B. made and presented to S. a writing showing according to his estimate, assets of the bank amounting to $104,717.20, and the value per share of the stock of the bank to be $123.19; that S. had six hundred shares of the value of $73,914, which, after deducting his indebtedness to the bank, left his interest to be $21,280.56. B. therein claimed two hundred and fifty shares of the capital stock, of the value of $30,797.50, thus stating his interest to exceed S.'s by the sum of $9,516.94. It was then agreed between B. and S. that the indebtedness of S. of $52,633.44 should be paid the bank by the surrender of stock of S. at $123.19 per share, in sufficient amount to equal the indebtedness, and that S., to make his interest equal to B.'s, should buy sufficient stock of B. at the value of $139 per share to make the interest of both in the bank equal. After this arrangement had been carried out by S. and B., C. & Co. purchased of S. his interest in the bank, with the understanding with B. that by such purchase the stock in the bank would be owned by B. and themselves in equal amounts. *Held*, The contract and arrangement between B. and S., and C & Co. and B., are binding and valid upon B., subject of course to the control of the government and the rights of creditors. Also, *held*, that the contract and arrangement are likewise valid and binding upon the owners of the capital stock thus held by B. in his own name, and of which secret trust neither S. nor C. & Co. had notice.

*Error from Leavenworth District Court.*

ACTION to determine who are the holders of the shares of stock in the Second National Bank of Leavenworth, and for a final distribution of the assets among the persons entitled to the same. Plaintiffs filed their original petition in the district court of Leavenworth county, March 31, 1877. The amended petition was filed August 3, 1877. After the issues had been made up, on the 5th day of March, 1878, the plaintiffs dismissed their action as to James C. Stone, without prejudice to a future action; and thereupon, on application of the defendant, Austin M. Clark, the court appointed Edward Stillings and John A. Hill referees, to hear and determine all

the issues of fact and of law in the case, and to report the same to the court in writing. Thereafter, on January 16, 1879, the referees filed the following report:

*To the District Court of Leavenworth County, Kansas:* We, the undersigned, E. Stillings and J. A. Hill, referees appointed in the above case to try the issues of fact and of law therein, submit the following report.

We were first sworn as required by law, and gave notice to all the parties to the suit who have joined issue in the pleadings herein, and at the time and place appointed for the trial of this case Messrs. Hurd & Green appeared as attorneys for the plaintiffs, each appearing for his respective clients named in the petition and amended petition, and Lucien Baker, Esq., appearing for said A. M. Clark and Milton E. Clark; whereupon the trial of this case was proceeded with, and the oral evidence of said William P. Borland, A. M. Clark and Milton E. Clark and other witnesses, and evidence having been given and received, the said referees on full argument of said cause by the respective counsel, find the following as their conclusions of fact, to wit:

1st. That in the month of December, 1873, J. C. Stone was the owner of sixty thousand dollars of the capital stock of said bank; and the twenty-five thousand dollars of stock in said bank which then stood in the name of said William P. Borland, as alleged in the petition, was the remaining stock of said bank, except fifteen thousand dollars of stock of said bank, which had been taken by the bank from the insolvent shareholders, and was then owned by the bank.

2d. The stock which was held in the bank consisted of said two hundred and fifty shares ($25,000) by said William P. Borland, was in part held and owned by him for himself, and in part as agent of said minors and Dr. Hasson, as alleged in the petition, but this fact was not known to said Stone or the Clarks.

3d. That J. C. Stone was largely indebted to said bank; his own debts which were in his own name, and partly in his father's name, amounting to the sum of $52,633.44, and the said J. C. Stone was then indebted to said A. M. and M. E. Clark in the sum of $21,280.56.

4th. That J. C. Stone, to relieve himself from embarrassment, proposed to said A. M. and M. E. Clark to sell to them his interest in said Second National Bank, and to said Borland,

to pay off his indebtedness to said bank in his stock in the same.

5th. That the said J. C. Stone and William P. Borland made an estimate of the value of the stock in said bank, as then held by them, and it was agreed between them that the said indebtedness of $52,633.44 should be paid by the surrender of the stock of said J. C. Stone at $123.19 per share, in sufficient amount to equal said indebtedness, and that the said Stone should then purchase a sufficient interest in the stock still held by said William P. Borland at $139 per share, to make the interest in the stock of said bank held by said William P. Borland equal to that then held by said J. C. Stone, and said last-mentioned agreement was performed by the surrender of the said stock by the said J. C. Stone, and the purchase and payment for such sufficient amount of the stock of said William P. Borland. The said A. M. and M. E. Clark thereupon purchased of said J. C. Stone his interest in the stock of said bank, and it was the understanding and agreement between said William P. Borland and A. M. and M. E. Clark that the stock in said bank held by said William P. Borland and said Clarks should be considered $50,000, of which the said Borland should be the owner and holder of $25,000, and the said A. M. and M. E. Clark of the other $25,000, and that the other $50,000 should be presumed to be taken by other parties, and the said bank kept in business if practicable.

6th. That in August of 1874, the bank went into voluntary liquidation; A. M. and M. E. Clark took possession of the moneys of the bank; took charge of the property of the same, and have, through officers elected, whether regularly or not, continued to manage and control the collection and disposition of the moneys and property of the bank from that time to the commencement of this suit, and to pay the debts of the bank.

7th. That in the management of the affairs of said bank, said A. M. and M. E. Clark took a mortgage made by J. C. Irwin and wife to Mrs. Spicer for the sum of $3,000, which was taken up and paid by them on the 26th of October, 1874, when said mortgage amounted to $3,180, which was advanced by said Clarks out of their own money. They then had in their possession of the money of said bank more than enough to pay said mortgage, of which they had the use as a deposit, although such money was liable to be called for to pay de-

positors. The money held by them for said bank was a part of the time sufficient to pay said note and mortgage, and a great part of the time was not sufficient for that purpose; said note and mortgage were on interest at the rate of twelve per cent. per annum. This mortgage was an incumbrance on property owned by the bank.

8th. That at the time said A. M. and M. E. Clark took possession of said property of said bank, they were themselves bankers, and carried on the business of closing up the business of said Second National Bank in their own banking house. And there was of said property of said Second National Bank, a note for money loaned made by W. H. Ralston for $2,600, which note was afterward renewed by said A. M. and M. E. Clark, in their own name, from time to time, till Sept. 10, 1877, when it was charged back to said Second National Bank by said A. M. and M. E. Clark.

9th. That the advancements alleged in the answer of A. M. and M. E. Clark as having been made by said William P. Borland on the terms therein set forth, were made, as well as that made to said William P. Borland as guardian, as herein alleged, and the amount of principal and interest chargeable to the stock of William P. Borland by reason thereof, including interest to this date, is $11,350.84; and the amount chargeable to the stock of said minor children, including like interest to this date, is $3,029.90. The following is a statement of the account of said A. M. and M. E. Clark, of receipts and disbursements, charging them with said $2,600, Ralston's note, and giving them credit for the amount of said Spicer note at the time of its payment, without interest, and showing how the balance stands to this date between said Clarks and said banks, to wit:

| *Clark & Co.* | *Cr.* |
|---|---|
| By Spicer's note, Nov. 17, 1874 | $3,180 |
| " rebate interest on same | 315 |
| " interest on average over-deposit of $300, 12 %, 4 years | 144 |
| | $3,639 |

| *Clark & Co.* | *Dr.* |
|---|---|
| Ralston note | $2,644.80 |
| Recording Ralston (Feb., '78) | 7.45 |
| Copy Borland petition (April, '77) | 4.00 |
| Cash bal. Clark & Co. and German Bank, not including amt. paid on Ralston | 290.88 |
| Stamps, etc | 150.00 |
| Recording mortgage | 2.00 |
| | $3,098.33 |
| Due Clark & Co | 540.67 |

Statement of the Case.

The said William P. Borland is entitled to a credit, and to be paid out of the first money realized out of the property of said Second National Bank, the sum of $300, on account of money expended and disbursements made in a collection, or attempt to collect, a claim in connection with the First National Bank of Topeka.

The following is the property now held and owned by said Second National Bank, and all of its property and means now held and owned subject to the payment of its debts, and to distribution among the parties therein, to wit:

SCHEDULE A.—REAL ESTATE.

| Kansas—Block. | Lots. | Addition. |
|---|---|---|
| 15 | 10, 11 | City proper. |
| 26 | 31, 32 | " " |
| 45 | 11, 12 | " " |
| 22 | 21 | " " |
| | 4 Halderman's Pilot Knob. | |
| | 7, 8, 9, 10, 12 Callahan's. | |
| | 13, 14, 15, 16 , " | |

LEAVENWORTH COUNTY.

| Section. | Tp. | Range. | Acres and Description. |
|---|---|---|---|
| 2 | 9 | 22 | 3 acres off s. end of w. $\frac{1}{2}$ of s. w. $\frac{1}{4}$ of n. e. $\frac{1}{4}$ of n. w. $\frac{1}{4}$. |
| 13 | 11 | 22 | s. e. $\frac{1}{4}$, 160 acres. |
| 14 | 11 | 22 | n. w. $\frac{1}{4}$, " " |
| 22 | 11 | 22 | n. w. $\frac{1}{4}$, " " |
| 33 | 11 | 22 | s. w. $\frac{1}{4}$, " " |
| 4 | 12 | 22 | n. w. $\frac{1}{4}$, " " |
| 4 | 12 | 22 | n. w. $\frac{1}{4}$, " " |
| 5 | 12 | 22 | n. e. $\frac{1}{4}$, " " |
| 8 | 12 | 22 | n. w. $\frac{1}{4}$, " " |

WYANDOTTE COUNTY.

| 7 | 11 | 23 | s. e. $\frac{1}{4}$. |
|---|---|---|---|

WABAUNSEE COUNTY.

| 2 (25) | 10 | 9 | s. e. $\frac{1}{4}$. |
|---|---|---|---|

JACKSON COUNTY.

| 15 | 8 | 13 | (all) 640 acres. |
|---|---|---|---|
| 16 | 8 | 13 | (all) 640 acres. |
| 18 | 8 | 13 | n. e. $\frac{1}{4}$, 160 acres. |
| 18 | 8 | 13 | frl. n. w. $\frac{1}{4}$, 147$\frac{79}{100}$ acres. |
| 18 | 8 | 13 | frl. s. w. $\frac{1}{4}$, 147$\frac{93}{100}$ acres. |
| 18 | 8 | 13 | n. $\frac{1}{2}$ of s. e. $\frac{1}{4}$, 80 " |
| 19 | 8 | 13 | n. $\frac{1}{2}$ of n. w. frl. $\frac{1}{4}$, 74$\frac{40}{100}$ |
| 20 | 8 | 13 | n. e. $\frac{1}{4}$, 160 acres.   [acres. |
| 21 | 8 | 13 | (all) 640 acres. |
| 22 | 8 | 13 | (all) 640 " |
| 27 | 8 | 13 | n. $\frac{1}{2}$, 320 " |
| 28 | 8 | 13 | n. $\frac{1}{2}$, 320 " |
| 30 | 8 | 13 | $\frac{1}{2}$ of n. e. $\frac{1}{4}$, 80 acres. |

23—26 KAS.

SCHEDULE B—COUNTER AND COUNTER FIXTURES.

1 writing desk.
1 money table.
1 standing desk.
1 standing table.
1 oval table.
1 table.
1 hat-rack.
1 marble-top wash stand.
1 letter press.
1 large burglar-proof safe.
Shelving in vault.
2 carpets.
Canceling stamps.
Hammer and screw driver.
1 clock.
Gas fixtures.

SCHEDULE C.

Seven bonds of Leavenworth city, originally $150 each, on which a portion has been received from the city. Balance of judgment against D. M. Adams, and interest, amount unknown.

| | | |
|---|---:|---:|
| Judgment against S. S. Smoot, et al | $7,000 | 00 |
| Balance note of M. W. Delahay | | 43 |
| " " " " | 26 | 76 |
| Judgment against I. E. Eaton | 150 | 00 |
| " " Wm. and Rachel Larimer | 2,575 | 00 |
| Revenue stamps, and stamped checks and postage stamps | 150 | 00 |
| The said bank owes in certificates of deposit | 730 | 00 |
| J. H. Mohan, assignee | 2 | 23 |
| Wm. Math, assignee | 13 | 20 |
| Milo Bassitt, assignee | 1,948 | 57 |
| W. B. Wetmore | 125 | 48 |

These are all the debts of the Second National Bank, except the statements of account between it and the owners of stock therein above given.

We find that when said Second National Bank so went into voluntary liquidation, the government bonds deposited by it as security for its circulation were sold by order of said bank, and the balance not necessary to redeem its circulating notes was paid to said bank, and afterward used by said A. M. and M. E. Clark in the payment of the debts of said bank.

That since the commencement of the trial of this cause the said A. M. Clark has become deceased, and Mary C. Clark, his widow, has duly qualified as the executrix of said A. M. Clark, and that the said Mary C. Clark is by the last will of said A. M. Clark sole and residuary legatee of said A. M. Clark, deceased.

And as conclusions of law we find:

That the said Milton E. Clark, Mary C. Clark, executrix

of A. M. Clark, deceased, and H. J. Dennis, special administrator on the estate of Alexander B. Hasson, deceased, and William P. Borland, and the said infant children by their said guardian, are entitled to have the real and personal property above described sold, and the proceeds thereof applied, first, to the payment of the cost and expenses of this suit; next, to the payment of the debts of said Second National Bank; and next, to be distributed to and between the present owners and holders of said stock by first paying to the holders of the stock or interests in said bank, who have received no share or portion, or only a partial share or proportion, till all are made equal in the proportions, and according to the facts above found, and the balance to be equally divided between, and paid to said shareholders in the proportions of shares and interest held by them, as above set forth. That no interest be allowed to said A. M. Clark and M. E. Clark, or the said M. E. and Mary C. Clark, executrix, on the said Spicer note and mortgage after the time of its said payment, but that the payment of the same be held to be a payment by said Second National Bank. That the said Ralston note should be charged to said Clark & Co., as shown by the accounts above. The $300 should be paid to William P. Borland out of the first money received. E. STILLINGS,

J. A. HILL,

*Referees.*

On February 15, 1879, the court required the referees to take other testimony, and report further facts, as follows:

1. Who are the owners of the stock of the Second National Bank of Leavenworth, and what amount thereof is held by each?

2. Upon what amount of the assets of said bank taken therefrom and exchanged for the stock thereof, was J. C. Stone liable, and what was the value of the assets upon which he was so liable?

3. Upon what amount of such assets as exchanged was said J. C. Stone not liable, and what was the value of such assets upon which he was not so liable at the time they were so taken?

4. What was the value of the stock for which said assets were exchanged, at the time they were so exchanged?

5. Did Alexander B. Hasson, after the same was done, ratify such exchange?

On May 19, 1879, the referees made and filed the following supplemental report:

We, the undersigned referees, to whom the above case was re-referred to take further testimony, and report on certain additional facts, having heard additional testimony at a hearing at which all the parties hereto by their attorneys were present, and arguments of counsel, find on the questions of fact re-referred to us, as follows:

*First.* That the owners of the stock of the Second National Bank of Leavenworth are the plaintiffs, and the defendants the Clarks and said bank; and that said parties own the same in the following proportion, to wit:

The said bank owns five hundred and seventy-four one-thousandths of said stock.

The said Clarks own two hundred and thirteen one-thousandths of said stock.

The heirs of Dr. A. B. Hasson own seventy one-thousandths of said stock.

The said children of the said plaintiff Borland own sixty-five one-thousandths of said stock, and the said William Borland the balance, amounting to seventy-eight one-thousandths, of said stock.

*Second.* That the said J. C. Stone, as between him and the bank, was liable to the bank for the whole amount of the indebtedness so taken up by him.

This answers the third question.

The stock for which said assets were exchanged was worth said price of ($123$\frac{19}{100}$)) one hundred and twenty-three $\frac{19}{100}$ dollars per one-thousandth (or share).

The said Alexander B. Hasson did not ratify said transaction of said bank taking up said stock for the liabilities of said J. C. Stone after it was done.          E. STILLINGS,

J. A. HILL,

*Referees.*

On July 12, 1879, the court ordered the reports of the referees confirmed, with the following modification:

The first, second and third findings of fact stated in the second report, filed May 20, 1879, are modified so as to read as follows:

*First.* The owners of the stock of the Second National

Bank of Leavenworth are the plaintiffs, and the defendants the Clarks and said bank; and that said parties own the same in the following proportions, viz.: The bank, six hundred and forty-four one-thousandths ($\frac{644}{1000}$); the Clarks, one hundred and seventy-eight one-thousandths ($\frac{178}{1000}$); the heirs of Hasson, seventy one-thousandths ($\frac{70}{1000}$); the minor children of Borland sixty-five one-thousandths ($\frac{65}{1000}$); W. P. Borland, forty-three one-thousandths ($\frac{43}{1000}$).

*Second.* The said J. C. Stone was liable to the bank, at the time of taking the securities therefrom, in the sum of $28,-656$\frac{98}{100}$; and of the sum used in the purchase of his stock by the bank, he was not liable to the bank for $32,217$\frac{6}{100}$.

*Third.* The assets of the bank exchanged for stock on the 23d day of December, 1873, were worth $60,874$\frac{4}{100}$.

Thereupon the court ordered, adjudged and decided that a receiver be appointed of all and singular the property, effects and estate, of every name and kind, of the defendant, the Second National Bank of Leavenworth.

And it is further ordered, that P. G. Lowe, of the city of Leavenworth, in the county of Leavenworth and state of Kansas, be, and he is hereby appointed receiver, and that on filing his bond in the penal sum of twenty thousand dollars, with two sufficient sureties, to be approved by the court, conditioned as by law required, and also on filing his oath of office, he be and hereby is vested with all the power and duties of receiver, according to law, of, in and to all the goods, chattels, merchandise, furniture, fixtures, books, accounts, books of account, notes, judgments, debts, dues and demands, claims, choses in action, lands, tenements, rents, issues, profits, credits, actions and rights of action, and property of every kind and value, real, personal and mixed, of the defendant, the Second National Bank of Leavenworth, wheresoever the same may be situate; and that the plaintiffs and the defendants, and particularly the defendants Milton E. Clark and Mary C. Clark, pay over to said receiver all moneys in their possession or under their control, belonging to the said bank defendant, and that they deliver to him all of the property of the said bank, and that all occupants or tenants of the real estate of the said bank pay rent to him; and that he forthwith make and file with the clerk of this court an inventory of all such property as shall come into his hands, or under his control as such receiver. And it is further ordered, that the said receiver collect all rents due, or which shall become due on any of the lands and tenements, or property of the said bank;

and also that he collect all of the choses in action that shall
be collectible, and on ten days' notice, duly published, sell
at public auction to the highest bidder, all of the furniture
and fixtures of said bank defendant, and all judgments here-
tofore recovered in its favor, and all other accounts and claims
due the said bank which shall not be collectible by the usual
process of law, and apply the proceeds of the same to the pay-
ment of the taxes on said property; and on such sale, exe-
cute to the purchasers of the said property good and sufficient
transfers and assignments for the same, conveying all of the
title and interest of the said bank defendant therein and there-
to.   And it is further ordered, that the said receiver enter
into negotiations for the sale of the real estate of the said
bank, and report such negotiations to this court for its action,
and that no sale of real estate be made without the order of
this court.   And it is further adjudged, that all of the chattels
and real estate of the said bank be sold by said receiver, and,
that all choses in action which are collectible be collected by
him, and all choses in action which shall not be collectible
by process of law be sold by the said receiver in the manner
as hereinbefore set forth.   And it is further adjudged and de-
creed, that the moneys belonging to the said bank defendant,
and the proceeds of all sales and collections, after the pay-
ment of all taxes due upon the property of the said bank,
and all debts owing by said bank, shall be applied and dis-
tributed in the manner following, that is to say:

*First.* To the fees and expenses of the receiver, to be al-
lowed and fixed by the court, and the costs of this suit, in-
cluding the allowance of two hundred dollars to each of the
referees.

*Second.* To the plaintiff Hetty A. Hasson, seventy three-
hundred-and-fifty-sixths of the balance.

*Third.* To the heirs of Borland, mentioned in the petition,
sixty-five three-hundred-and-fifty-sixths ($\frac{65}{356}$), less $2,000
advanced to them, together with interest thereon at seven per
cent. per annum from March 22, 1875.

*Fourth.* To W. P. Borland, forty-three three-hundred-and-
fifty-sixths ($\frac{43}{356}$), less $7,768 advanced to him, with interest
on $3,464.80 at the rate of twelve per cent. per annum, and
on $4,303.40 at ten per cent. per annum, from March 22, 1875.

*Fifth.* To M. E. Clark and Mary C. Clark, the successors
in interest of Clark & Co., the balance.

The plaintiffs bring the case here.

*T. A. Hurd,* for plaintiff in error W. P. Borland, and for Borland as guardian.

*H. T. Green & W. Green,* for plaintiff in error Hetty A. Hasson.

*Lucien Baker,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: The Second National Bank of Leavenworth was organized as a corporation, and commenced doing business in 1865, under the act of congress approved June 3, 1864. Its capital was $100,000, divided into one thousand shares of $100 each. The bank carried on its business from its organization until July, 1874, when it went into voluntary liquidation, and ceased to do business as a national bank. The meeting of the shareholders which adopted the resolution that the bank should be put into liquidation, was held December 6, 1873, and all the holders then present voted in favor of the liquidation. J. C. Stone was the owner of $60,000 of shares at this time, and $25,000 of stock stood in the name of William P. Borland. The remaining stock ($15,000) had been taken by the bank from insolvent shareholders, and was then owned by the bank. The stock held by William P. Borland was in part owned by him for himself, and in part as agent of certain minors and one Alexander B. Hasson. Neither J. C. Stone nor the Clarks knew that any other person than Borland was interested in the shares of stock standing in his own name. J. C. Stone was largely indebted to the bank, amounting in all to the sum of $52,-633.44, and he was then also indebted to A. M. and M. E. Clark in the sum of $21,280.56. J. C. Stone, to relieve himself from embarrassment, proposed to A. M. and M. E. Clark to sell them his interest in the bank, and to Borland, to pay off his indebtedness to the bank in his stock. At this time Borland made in writing an estimate of the value of the

stock in the bank as then held by Stone and himself, and it was agreed between them that the indebtedness of $52,633.44 should be paid by the surrender of the stock of said J. C. Stone, at $123.19 per share, in sufficient amount to equal said indebtedness, and that Stone should then purchase a sufficient interest in the stock held by Borland at $139 per share to make his interest in the stock of said bank equal to that held by William P. Borland. This last-mentioned agreement was fully performed by the surrender of the stock by Stone, and the purchase and payment of a sufficient amount of the stock of Borland. Thereupon A. M. and M. E. Clark purchased of Stone his interest in the stock of the bank, and it was then the understanding and agreement between Borland and A. M. and M. E. Clark that the stock in the bank held by Borland and the Clarks should be considered $50,000, of which the said Borland should be the owner and holder of $25,000 and the said A. M. and M. E. Clark of the other $25,000, and that $50,000 should be presumed to be taken by other parties, and the bank kept in business, if practicable.

The agreement between Borland and Stone, supplemented by the action of A. M. and M. E. Clark thereon, and the understanding between Borland and the Clarks, raises the principal question involved in this case. It is claimed by plaintiffs in error that the agreement between Stone and Borland, and the subsequent connection of the Clarks therewith, was fraudulent and wholly void as to the minor children of Borland, and Alexander B. Hasson; that the assets withdrawn from the bank with the consent of the Clarks should be refunded or the value thereof made good by the Clarks, and that the minor children and the estate of Hasson be permitted to have a distribution as though there had been no reduction of the capital stock of the bank, or any diminution in the value of its assets by the action of Borland, Stone and the Clarks. The agreement between Borland and Stone, made soon after the adoption of the vote for the bank to go into voluntary liquidation, is binding and valid as between Stone and Borland, and for all of the shares of

stock then standing in Borland's own name. Stone treated with Borland as if he was the sole owner of the stock held by him, and he had the right so to deal and agree with him, as he had no notice to the contrary. The Clarks acted upon the contract entered into between Stone and Borland, upon the understanding and belief that Borland was the sole owner of the stock held by him, and also of that which he had disposed of to Stone to make the interest of the two equal. If the rights of Hasson or his estate, and the rights of the minor children of Borland, have suffered by the transactions between Borland and Stone and the Clarks, it is certainly most unfortunate, but the result is owing to the conduct of Borland. If the stock respectively owned by Alexander B. Hasson and the minor children of Borland had been issued in their name, or if Stone and the Clarks had had notice that Borland was holding their stock in trust for them, the argument made by plaintiffs in error would be pertinent, and the principles announced in *Ryan v. L. A. & N. W. Rld. Co., et al.*, 21 Kas. 365, applicable. As the stock was understood between the parties to be owned by Stone and Borland, there was no obstacle to any arrangement among themselves as to the disposition of such stock which did not interfere with the interests of the government, or the rights of creditors. The government does not intervene, and makes no claim in this matter. The creditors are satisfied, and do not object to the arrangements of Stone and Borland, or the Clarks. As Borland is estopped from objecting to the disposition of the assets, and to the subsequent management of the bank affairs, owing to his agreement and participation therein, so the parties for whom he held stock in his own name, and for whom he acted, are likewise estopped, as neither Stone nor the Clarks knew of their interest. This conclusion leaves only a calculation of the amount of shares of stock the present owners are entitled to, and the manner in which the assets are to be divided.*

[* NOTE.—After the decision of this case, the plaintiffs in error filed a motion for a rehearing as to the distribution of the assets in the hands of the receiver. This motion the court heard in November, 1881; and at its session on January 5, 1882, modified its original order herein, by making the order stated in the opinion, *supra.*—REPORTER.]

If the sum which the Borland heirs have already drawn is treated as an asset, and added to the other assets before making a distribution, and then after determining the distributive share or proportion of each in the aggregate assets, and the amount so drawn out by such heirs be deducted from their share or portion, as it is less than such share, such distribution furnishes a correct method of division for the Clarks, Mrs. Hasson, and the heirs. Under this rule, if the division had been made on July 12, 1879, at the date of the decree of the court below, and the assets in the hands of the receiver had been $20,000, as we now calculate it, M. E. & Mary C. Clark, as successors of Clark & Co., would have been entitled to receive $12,853.97; Hetty A. Hasson, $5,054.93; and the heirs of Borland, $2,091.15. Of course, if the amount overdrawn by W. P. Borland is refunded, or if the assets prove to sufficiently exceed the present estimate so as to render the advances to Borland less than his distributive share, such additional assets will be divided in accordance with the above rule as to the respective interests of the owners in the capital stock. Substantially, this affirms the judgment of the district court, excepting that instead of the balance of the assets being paid to M. E. Clark and Mary C. Clark, as ordered by the district court in its fifth finding of distribution, the moneys are to be divided as above stated.

All the Justices concurring.